FILED

2023 Mar-09  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WALTER BEVERLY, III, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **2:20-cv-00352-LSC** |
| **v.** | ) | |
| | ) | |
| **FORMEL D,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

Plaintiffs Walter Beverly ("Beverly"), Mary Dussett ("Dussett"), Homer Fuller ("Fuller"), Jonathin Green ("Green"), Naomi Harrell ("Harrell"), Allen McMurray ("McMurray"), Antonio Rodgers ("Rodgers"), and Tommy Williams ("Williams")(collectively "Plaintiffs") bring this action against Defendant Formel D, asserting claims of disparate treatment in promotions under 42 U.S.C. § 1981. Plaintiffs Beverly, Harrell, McMurray, Green, Rodgers, and Williams also assert claims for retaliation under 42 U.S.C. § 1981. Before the Court is Defendant's Motion for Summary Judgement. (Doc. 62). For the reasons stated below, Defendant's motion is due to be **GRANTED**.

## I.   BACKGROUND[1]

When this case arose, Formel D provided Mercedes Benz US ("MBUSI") with both entry and skilled-level manufacturing employees to work at MBUSI's primary plant in Vance, Alabama, and its satellite locations, referred to as Bibb County, IPAP, EAK, Moundville, and the Plaza. Entry level employees performed tasks such as driving cars off the production line. Skilled positions included Junior Technician, Technician I ("Tech I"), and Technician II ("Tech II").

The qualifications for Tech I were "a high school diploma or equivalent and 1 to 2 years' experience or training or equivalent combination of education and experience in automotive repair." (Doc. 63 ¶¶ 11-12). The qualifications for Tech II were "a high school diploma or equivalent and 5 years of automotive repair experience and/or training; or equivalent combination of education and experience . . . [and] were expected to . . . have technical skills specifically in the areas of electrical and diagnostics." (*Id.* ¶¶ 14-15). Tech Is performed their work under

---

[1]     The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

"significant supervision," (*id.* ¶ 12) and Tech IIs performed under "little to no direct supervision." (*Id.* ¶ 15).

Plaintiff Harrell was employed in Logistics. All other Plaintiffs were employed as either Tech Is or Tech IIs. All Plaintiffs are African American. In February 2019, five of the Plaintiffs filed identical EEOC complaints regarding Formel D's promotional practices. Their complaints alleged that Formel D "does not formally announce positions, but rather uses informal and subjective procedures to identify candidates." (Doc. 69-1). Formel D used this practice, the Plaintiffs allege, to discriminate against African American employees. Thus, each of the Plaintiffs have remained Tech Is, Tech IIs, or in Logistics, "despite having expressed on numerous occasions a desire to move up." (Doc. 69-1 pp. 5, 7, 12, 17, 20). In May 2019, Williams, Harrell, and Fuller filed the same EEOC complaints.

More detailed facts regarding each specific Plaintiff are provided below.

### A. Beverly

Beverly was first hired by Formel D in May 2014. In June 2016, Formel D terminated him for tardiness and attendance issues. (Doc. 62-1 ¶21). Although this termination technically made Beverly ineligible for rehiring, Formel D rehired him in March 2018 and assigned him to Vance. (*Id.* ¶ 21). Beverly resigned in July 2018 to accept a position with another company but was rehired by Formel D in January

2019. In June of 2019, Beverly began working on the MBUSI contract and, that same month, he filed his EEOC complaint challenging Formel D's promotional practices.

Beverly received two reprimands in August 2019: one for missing a "mandatory safety and production meeting" without an excuse, the other for "report[ing] to work without steel toe shoes as required under Formel D's work rules." (Doc. 62-1 ¶ 55). He was reprimanded again the next month for "walking off the job because he did not have his tools." (Doc. 63 ¶ 57). It is undisputed that "loaner tools were available to Beverly and others . . . who did not yet have their tools," but that "Beverly rejected the offer of loaner tools and left the work site." (*Id.* ¶ 58).

Formel D also cited Beverly for multiple attendance issues. In September 2019, "Beverly sent a text message to his supervisor stating that he was not reporting to work and did not offer a reason." (*Id.* ¶ 60). When Formel D's HR department called Beverly to ask why he was not at work, Beverly said "because he

had kids." (*Id.* ¶ 60).[2] Then, two weeks later, Beverly missed work on October 8 and 9, in his words, "because of car trouble." (*Id.* ¶ 61).

On October 9, 2019, Formel D terminated Beverly's employment after "an MBUSI manager asked that Beverly be removed from the project due to his continuing attendance problems." (*Id.* ¶ 62-63). Beverly admits that he never applied for a promotion during his time with Formel D. (Doc. 69 p. 10 ¶ 64).

### B. Dussett

Dussett was originally hired by Formel D in September 2016. In June 2018, Dussett temporarily resigned, in her words, because "she was denied advancement." (Doc. 63 p. 15 ¶ 73). The next month, after Project Manager Daniel Singh promised her that she would be promoted to Tech II if she came back, she returned. However, upon her return, "Singh told Dussett she needed additional training in electrical skills and diagnostics if she wanted to be promoted to Technician II." (*Id.* ¶ 76). Dussett admits that she did not receive this training, but testified that, in her opinion, she "did not need [it]." (Doc. 69 p. 11 ¶ 77).

Dussett filed her EEOC complaint challenging Formel D's promotional practices in February 2019.

---

[2]      Although Beverly wrote in his Brief that he disputes sending this text message or having this conversation with HR (*see* doc. 69, p. 9 ¶ 60), he offers no evidence to support the point. The only evidence he cited was his own testimony stating that he did not *remember* this incident.

## C. Fuller

Fuller was hired by Formel D in October 2015 "as a temporary worker in the role of Technician I." (Doc. 63, p. 16 ¶ 82). In March 2016, "Formel D converted Fuller to a regular, full-time employee . . . and assigned him to the MBUSI Vance contract." (*Id.* ¶ 84). Fuller "applied for and was promoted to" Tech II in December 2016. (*Id.* ¶ 85).

Fuller worked as a Tech II on the MBUSI Vance contract in March 2017. In May of 2019, he was involved in an incident in which his manager reported Fuller's behavior was "childish and unprofessional."[3] That same manager later noted Fuller had repeated "conflicts with coworkers." (*Id.* ¶ 91).

Citing that incident and his relationships with his coworkers, Formel D reassigned Fuller to Bibb County in May of 2019. Managers there "complained to Formel D that Fuller was disruptive, challenged managers in team meetings, was frequently out of his work area, and that he interrupted coworkers from doing their work." (*Id.* ¶ 94). According to an MBUSI manager, Fuller continued to be disruptive even after being counseled by Formel D about these issues.

[3] "In May of 2019, Fuller reported to MBUSI management that someone had locked his toolbox with the keys inside. In response, an MBUSI manager stopped production to address the shop regarding the need to respect others' property and work areas." (Doc. 63 p. 17 ¶ 90). Despite the manger not identifying Fuller as the reason for the address, Fuller interrupted him "to announce that he was the reason for the meeting." (*Id.*).

Fuller filed his EEOC complaint challenging Formel D's promotional practices in May 2019. In August 2019, Formel D removed Fuller from the Bibb County contract after the MBUSI Manager there "requested that Fuller not return to the facility due to his inability to work with others, and because the facility was over headcount for Technicians by that point." (*Id.* ¶ 96). That same month, Fuller filed a second EEOC complaint, alleging that his removal from Bibb County was retaliation for his May 2019 EEOC complaint. Soon after, Formel D offered Fuller a Tech II position in Georgia, which he declined.

Fuller briefly returned to the Vance MBUSI location in September 2019, stopped working there a month later, but was not formally terminated until March 2020.[4] During his time working for Formel D, Fuller only applied for the Tech II promotion, which he received, despite admittedly seeing other positions posted.

### D. Green

Green was hired by Formel D as a Tech I in October 2014. He worked on the Vance MBUSI contract for the duration of his employment. In February 2019, Green filed his EEOC complaint challenging Formel D's promotional practices. In March 2020, Green and all other production employees were laid off "due to the

---

[4]      The evidence does not explain why Fuller's employment ended or why he was not formally terminated until several months later. This fact is not material to the Court's decision.

COVID-19 pandemic." (Doc. 63, p. 20 ¶ 107). In April 2020, Green was terminated "due to shortage of work." (Doc. 63, p. 20 ¶ 20).

Green did not apply for any promotions while at Formel D.

### E. Harrell

Harrell began working for Formel D in March 2018 as a Driver in Vance. Around November 2018, she applied for Quality Inspector and Logistics Technician, but received neither.[5] However, based on her interest in those positions, she was offered and accepted a position in Logistics in January 2019. Additionally, she later applied for promotions to Tech II and Supervisor.

In May 2019, Harrell filed her EEOC charge challenging Formel D's promotional practices. (Doc. 69-1). In August 2019, Harrell was reprimanded for "leaving her shift early in violation of company policy, failure to stay within her workstation, and for showing favoritism to Technicians." (Doc. 63 p. 21 ¶ 115). Harrell admitted to leaving her shift early and leaving her workstation but denied showing favoritism.

In October 2019, Harrell was involved in "a verbal altercation outside her workstation with coworker Brittany Welch," during which the two exchanged

---

[5]     Harrell does not challenge the denial of these promotions.

shouted obscenities. (*Id.*, p. 22 ¶ 120). Eventually, "Manager Heather Frizzell intervened and told Harrell to go outside, which Harrell initially declined to do." (*Id.* ¶ 121).[6] Citing that altercation and other incidents involving her leaving her workstation, Formel D terminated Harrell in October 2019. Formel D issued a reprimand to Welch, who is also African American, rather than terminating her, in their words "because she did not have a prior disciplinary history." (*Id.* ¶ 126).

### F. McMurray

McMurray began working for Formel D in March 2018 as a Tech I in Vance. In February 2019, he filed his EEOC complaint challenging Formel D's promotional practices.

In the Summer of 2019, McMurray was transferred to the IPAP location. That September, "McMurray was verbally counseled for attendance issues." (*Id.* ¶ 136). An Associate Support Specialist present during that counseling reported that "McMurray became upset and interrupted the manager attempting to explain the counseling." (*Id.* ¶ 137). McMurray claims that his attendance issues were due to "medical issues he was experiencing with his hands that required numerous

---

[6]     Harrell offers no evidence disputing this fact and instead merely cites her own testimony stating she "does not *recall* whether Frizzell witnessed the altercation as she does not *remember* seeing her when it occurred." (Doc. 69 p. 16 ¶ 121)(emphasis added).

doctor's visits" and that he "did not disrespect" the manager during the meeting. (*Id.* p. 19 ¶ 136).

Later that September, Formel D and MBUSI conducted a routine review of production output at IPAP. The average output for a Tech I was calculated to have been over six vehicles per Tech I. McMurray's output was zero vehicles, lower than anyone's. According to Formel D and MBUSI management, when they counseled McMurray about his output level, he explained it by claiming that he was training newer Techs. McMurray denies this meeting ever occurred and claims that his output level was zero "because Formel D's management purposefully did not show him how to turn in documentation reflective of the jobs he had performed." (*Id.* ¶ 139). Formel D terminated McMurray on October 4, 2019, citing his attendance issues and production output levels. (*Id.* ¶ 143).

McMurray did not apply for any promotions at Formel D. (*Id.* ¶ 144).

### G. Rodgers

Rodgers was hired by Formel D in August 2018 as a Tech I working in Vance.   In February 2019, he filed his EEOC charge challenging Formel D's promotional practices.

Around March 2019, Rodgers applied for a promotion to Onsite Repair Supervisor. It was awarded to Heather Frizzell. In August of 2019, Rodgers applied for a promotion to Tech II. He was not immediately selected for this promotion but did receive it in November 2019. That same month, Rodgers applied for the position of Project Manager. As Rodgers admits, he did not receive this promotion because he was not qualified. (*See* Doc. 63 ¶¶ 160-61; doc. 69 p. 24 ¶¶ 160-61). Two months later, Formel D claimed that "management learned Rodgers was not entering his time as required by company policy." (Doc. 63 p. 27 ¶ 158).

In March 2020, Rodgers was laid off due to the Pandemic. (*See* Doc. 69. p. 24 ¶ 164). His employment was terminated the next month "due to shortage of work," according to Formel D. (Doc. 63 p. 27 ¶ 165).

### H. Williams

Formel D hired Williams as an entry-level employee in August 2015. In November that year, he was promoted to Tech I. In January 2017, he was promoted to Tech II. In February 2019, Williams filed his EEOC challenging Formel D's promotional practices.

Williams does not recall applying for the Tech I or Tech II positions but believes that he received the promotion after being tested on the job for the

position. (*See* Doc. 61-21 p. 45:10-47:14). He did not apply for any other promotions at Formel D. In March 2020, Williams was laid off due to the pandemic and in April 2020 was terminated "due to shortage of work." (Doc. 63 p. 29 ¶ 172).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal*

*Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213-14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Likewise, conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (*per curiam*) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   DISCUSSION

Although some Plaintiffs filed EEOC complaints regarding disparate pay, their Second Amended Complaint does not state claims for disparate pay.

Moreover, Defendant claimed in its Brief that "Plaintiff's Second Amended Complaint Does Not Allege Disparate Pay" and "[t]he only allegations concerning pay are . . . premised on Plaintiffs' failure to promote claim." (Doc. 63, p. 46). No Plaintiff responded to that argument. Accordingly, even if Plaintiff's Second Amended Complaint had asserted a separate claim of disparate pay under § 1981, that claim has since been abandoned. *See Resol. Tr. Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995)("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). The Court therefore limits its analysis to Plaintiffs' claims for failure to promote and retaliation.

## A. Failure to Promote Claims

Under Section 1981, an employer may not discharge or otherwise discriminate against an employee because of race. *See* 42 U.S.C. § 1981. To establish a Title VII claim, a plaintiff may proffer either direct or circumstantial evidence of discrimination. *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 920 (11th Cir. 2018). Direct evidence of discrimination consists of "only the most blatant remarks, whose intent could mean nothing other than to discriminate." *Rojas v. Florida*, 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002) (quoting *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999)).

All Plaintiffs' failure to promote claims are based entirely on circumstantial evidence. This Court evaluates the sufficiency of circumstantial evidence under either *McDonnell Douglas* or the "convincing mosaic" framework. *See*, *e.g.*, *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

Under *McDonnell Douglas*, the plaintiff creates a presumption of unlawful discrimination by establishing a *prima facie* case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (*en banc*). If the employee establishes a *prima facie* case, the burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer proffers a legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).

A *prima facie* case of discrimination in the context of a failure to promote claim has four elements: "(1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010)(citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.

2004). Regarding the fourth element, the person who receives the position must be "similarly situated in all relevant respects." *See Brown*, at 1174.

An employee may also survive summary judgment if a jury may infer intentional discrimination from a "convincing mosaic" of circumstantial evidence. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). An employee may establish a convincing mosaic through evidence such as "(1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011)).

Each Plaintiff presents individualized arguments under *McDonnell Douglas*. The Plaintiffs also present a collective argument under the convincing mosaic framework. The Court analyzes each of the individualized arguments first.

**1.  Beverly's Failure to Promote Claims**

Beverly claims that he was discriminatorily denied promotions to Tech II and Supervisor.[7] These claims fail under *McDonnell Douglas*.

Beverly failed to provide sufficient evidence to show that he was qualified to be a Tech II. Specifically, he failed to provide evidence that he had "5 years of automotive repair experience and/or training; or equivalent combination of education and experience." (Doc. 63 ¶ 14). According to the evidence, Beverly's only automotive repair experience or training was his employment with Formel D. But Beverly worked for Formel D for just *under* five years. (Doc. 62-1, Ex. 22).

Likewise, the evidence does not show Beverly was qualified to be a Supervisor. The qualifications for Supervisor were "experience or training in management; proficiency in Microsoft Word, Excel, and Power Point; experience in analytical problem solving to identify, evaluate, and resolve workplace issues;

---

[7]     Beverly does not specify which positions he claims to have been discriminatorily denied. Instead, Beverly's failure to promote claims are based on his assertion that "white employees Tyler, Ronnie, Heather, and Christen were all put into positions above him." (Doc. 69, p. 27 ¶¶ 6, 14). He does not provide last names for any of these people, except Heather Frizzell, who was an Onsite Repair Supervisor. Therefore, to determine which other positions Beverly alleges he was discriminatorily denied, the Court must first identify "Tyler, Ronnie, and Christen." The evidence reveals two Tylers: Tyler Barrett, who was hired as a Tech I in August 2018 then promoted to Tech II in February 2019, and Tyler McCurley, who was hired as a Tech I in November 2017 and promoted to Tech II in November 2019. Because Beverly was fired in October 2019, he could only be referring to Tyler Barrett being promoted to Tech II. There is no evidence of a "Ronnie" or "Christen" who had a position above Beverly. Formel D's employment records reveal only one person named Ronnie, Ronnie Higginbotham, but he was a Tech I, and the closest name to "Christen" is "Kristin Lipham," who was also a Tech I. (Doc. 62-31, pp. 7-8).

experience generating presentations and reports; and customer service skills."
(Doc. 62-1, p. 10 ¶ 79). Beverly cited no evidence indicating he possessed these
qualifications, and the Court found none through its own search of the record.[8]

Further, Beverly failed to provide sufficient evidence to satisfy the fourth
element of *McDonnell Douglas*—that a person outside of his protected class who is
"equally or less qualified" and "similarly situated in all relevant respects" received
the positions. *See Brown,* 597 F.3d at 1174. Beverly identifies Tyler Barrett
("Barrett") and Heather Frizzell ("Frizzell") as receiving the Tech II and
Supervisor positions, respectively. Neither of these employees are proper
comparators because, as previously explained, the evidence does not show Beverly
was qualified for either position, and Formel D provided evidence that both Frizzell
and Barrett were qualified.

Frizzell and Barrett are unsuitable comparators for an additional reason. The
purpose of the "similarly situated" element is that comparisons between the
differential treatment of employees are only useful where there is significant
commonality between them. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d
647, 656 (7th Cir. 2021) ("To determine whether employees are similarly situated,

---

[8]     Before joining Formel D, Beverly obtained a high school diploma, took courses for
barbering, sprayed pesticides for a lawn service company, loaded trucks for Ryder Logistics,
stacked pipes for a temporary agency, operated a forklift, and worked as a barber. (Doc. 61-1 40:6-
9).

courts ask 'whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis.'"). Beverly was not employed on the MBUSI contract in Vance when Barrett or Frizzell received their promotions.[9] The Court can imagine circumstances where employees could be similarly situated despite their employment not overlapping at the time of promotion—for example, where their employment was separated by a gap of only a few days, where the official making promotional decisions was the same, etc. However, Beverly cited no evidence indicating that the circumstances of Frizzell and Barrett's promotions were such that comparing their differential treatment would be useful. *See also Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1179 (11th Cir. 2010)(quoting *Chappell–Johnson v. Powell*, 440 F.3d 484, 488 (D.C.Cir.2006)("In a failure-to-promote case, the plaintiff must show 'that other employees of similar qualifications who were not members of the protected group were indeed promoted *at the time the* plaintiff's request for promotion was denied.'") (emphasis added)(citation omitted).

---

[9]    Frizzell was promoted to Supervisor twice: once in October 2018—three months after Beverly resigned from Formel D on July 25, 2018 and eight months before Beverly was rehired on June 13, 2019—and again in January 2020—three months after his employment was terminated on October 9, 2019. Barrett was promoted to Tech II in February 2019 while working in Vance and, at that time, Beverly was working for Formel D in Tennessee. (Doc. 62-1, p. 3 ¶21).

Even if Beverly had submitted sufficient evidence to satisfy his initial burden under *McDonnell Douglas*, the burden would then shift to Formel D to provide legitimate, nondiscriminatory reasons for its promotional decisions. *See Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). The burden at this stage "is exceedingly light," and is one of production, not a burden of proof. *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). Formel D has satisfied its burden at this stage by explaining that it promoted Barrett and Frizzell over Beverly because the former employees were qualified and the latter was not, and Beverly did not apply for either promotion. (Doc. 62-1, p. 4 ¶ 37); (Doc. 63, pp. 38-39).[10]

Because Formel D has articulated legitimate, nondiscriminatory reasons for its promotional decisions, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason [is] a pretext for discrimination." *Alvarez*, 610 F.3d at 1264. Pretext can be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. Cnty. Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir.2006) (emphasis added and quotation omitted). Either way, "[i]f the proffered

---

[10]    Formel D did not cite the fact that Beverly was not employed in Vance when the promotion to Supervisor was awarded to Frizzell as a justification for choosing not to promote Beverly to Supervisor.

reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. . . . Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088.

Beverly has insufficient evidence to show that either of Formel D's justifications for promoting Frizzell were pretextual. Regarding Formel D's application-based justification, Beverly cited no evidence of pretext. Of course, citing Beverly's lack of an application would be an illegitimate justification for not promoting him if Formel D did not take applications for Supervisor. However, Beverly does not have sufficient evidence to show Formel D did not take applications. Beverly cited only his own testimony on this point. But that testimony demonstrates that Beverly could not have known whether Formel D took applications for these positions because he admitted to never visiting the web page where those jobs were posted. (Doc. 61-1 at 108:11-17)("Q: Do you ever remember going to this web page to see the job openings? A: No."). Citing Beverly's lack of an application would also be illegitimate if Beverly had in fact applied for the position or if Frizzell did not. But Beverly himself testified that he never applied for any promotions with Formel D, and he cited no evidence showing that Frizzell did not apply to Supervisor.

Regarding the qualifications-based justification, Formel D officials testified that "Frizzell was selected for Supervisor . . . because she had prior experience in a client facing customer service role, training in organizational management through the Work Development Program, demonstrated competency on the job as a Technician I in solving workplace problems, and she demonstrated aptitude in computer skills, namely, Word, Excel, and Power Point." (Doc. 63 pp. 36-37). Beverly left the evidence of Frizzell's qualifications undisputed. Although Beverly wrote in his Brief that, "based on personal observation, Frizzell was not qualified," (doc. 69, p. 27 ¶ 13), the testimony Beverly cited to support this proposition merely quotes himself saying that Frizzell was picked over him "because she is white and a female." (Doc.61-1, 113:7). Neither this conclusory testimony nor Beverly's unsubstantiated "personal observations" are sufficient to create a genuine dispute regarding Frizzell's qualifications. *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted)("[A] plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted.").

Beverly also lacks sufficient evidence to show that Formel D's justifications for promoting Barrett to Tech II over him were pretextual. Formel D officials testified that Barrett "had electrical and diagnostic skills required" to be a Tech II.

(Doc. 62-1, p. 5 ¶ 45). Beverly cited no evidence indicating that Barrett lacked these skills and, as the Court has explained, Beverly cited no evidence of possessing them.

Formel D officials also cited the fact that Beverly did not apply to be a Tech II as a justification for not promoting him. Again, citing Beverly's lack of an application would be an illegitimate justification if Formel D did not take applications for Tech II, if Beverly had applied for Tech II, or if Barrett did not. But again, Beverly's testimony proves that he could not have known whether Formel D posted the Tech II position, he testified that he never applied for any promotions with Formel D, and he cited no evidence indicating that Barrett did not apply to be a Tech II.

### 2. Dussett's Failure to Promote Claims

Dussett's claims that she was discriminatorily denied a promotion to Tech II and the Onsite Repair Supervisor positions. Her claims fail under *McDonnell Douglas* because she failed to provide sufficient evidence to show that she was qualified for either position. Specifically, Dussett submitted no evidence indicating that she met any of the previously discussed qualifications for Supervisor or

evidence indicating that she had the requisite electrical and diagnostic skills necessary to be a Tech II.[11]

Dussett also provided insufficient evidence to show that a person outside of her protected class who is "similarly situated in all relevant respects" received the positions. *See Brown,* 597 F.3d at 1174. Dussett points to three purported comparators for the claim based on the Supervisor position: Frizzell, "Colton," and Justin Hammond ("Hammond"). The undisputed evidence shows that Hammond was never a Supervisor, and he therefore cannot be a comparator. Frizzell cannot be a comparator because, unlike Dussett, the undisputed evidence demonstrates that Frizzell had "training through the Workforce Development Program and demonstrated competency in organizational management." (Doc. 62-1, p. 5 ¶45). Dussett does not provide a last name for Colton, but Formel D's employment records, which Dussett has given the Court no reason to doubt, only refer to one employee by that name, Colton Hughes ("Hughes"). But it is not clear if Hughes ever actually served as a supervisor and, if he did, he would have been promoted to that position after Dussett had been fired. (*See* doc. 61-22, 7:11–12, 11:1–9, 39:19–21). Thus, even if Hughes was promoted to a supervisor position,

---

[11] Although Formel D officials "told Dussett she needed additional training in electrical skills and diagnostics if she wanted to be promoted to Technician II," (doc. 63 ¶ 76), Dussett never completed the training.

Dussett has provided insufficient evidence to show enough commonality with Hughes that comparing their treatment is useful despite their employment not overlapping. *See Howell*, at 656; *Brown*, at 1179.

Dussett pointed to Barrett, McCurley, and Charlie Chong as being promoted to Tech II. But all these employees had "either completed most or all phases of the MBUSI training or had equivalent experience in electrical and diagnostics." (Doc. 62-1, p. 5 ¶ 45). The undisputed evidence shows that "Dussett did not enroll in or complete the MBUSI electrical and diagnostic training required for the Technician II position, and she did not have equivalent experience." (*Id.*). Thus, these employees are not proper comparators.

Moreover, even if Dussett could satisfy her initial burden under *McDonnell Douglas*, her claims would still fail. Formel D explained it decided to promote Dussett's purported comparators in lieu of her because she was not qualified for and did not apply to either position. (*Id.* ¶ 43). Dussett submitted insufficient evidence to show these lawful justifications were pretextual. Dussett's evidence does not show she was qualified for either position, as explained above, and further failed to show that any of her purported comparators were unqualified. Likewise, Dussett cited no evidence of applying for these positions, or evidence that the purported comparators did not apply for them. Finally, Dussett does not have

sufficient evidence to show Formel D did not take applications for these positions. On this point, Dussett only cited her own testimony indicating that she "never saw any job postings or emails directing her where and how to apply for open positions." (Doc. 69, p. 11 ¶ 79).

### 3. Fuller's Failure to Promote Claims

Fuller claims that he was discriminatorily denied a promotion to Supervisor. Fuller failed to show that he was qualified for this position. Specifically, Defendant provided evidence indicating Fuller lacked "experience in a client facing role, training in organizational management, competency in solving workplace problems, and aptitude in computer skills, namely, Word, Excel, and Power Point." (Doc. 62-1, p. 7 ¶ 57). Fuller cited no contradictory evidence, and the Court was unable to find any through its own search of the record.[12]

Fuller also failed to identify a similarly situated comparator who was promoted to Supervisor. He points to Frizzell, but she is not similarly situated because, unlike Fuller, the evidence indicates Frizzell was qualified. (Doc. 62-1, p. 7 ¶57). Finally, Fuller provided no evidence indicating that Formel D's lawful justifications for promoting Frizzell to Supervisor over Fuller—because Frizzell

---

[12] For example, Fuller's resume does not indicate that he possessed any of those qualifications. (*See* doc. 61-3, Ex. 22).

was more qualified and applied for the promotion—were pretextual. Specifically, Fuller cited no evidence indicating Frizzell did not apply for this promotion or that he did. Fuller also cited insufficient evidence to show that Formel D did not take applications for this position. On this point, he only cited his own testimony. But that testimony demonstrates only that Fuller did not remember seeing this Supervisor position posted. (Doc.61-3, p. 72: 7-9)("Q: You don't remember ever seeing those postings? A: "Not the supervisor.").

### 4. Green's Failure to Promote Claims

Green claims that he was discriminatorily denied promotions to Tech II and a Supervisor position.[13] These claims fail because he lacks evidence indicating he was qualified for either position. As for Tech II, Green only cites his own testimony indicating that he had performed some tasks that are sometimes assigned to Tech IIs. However, Green admits that there was overlap between the two positions and that there were some tasks that Tech IIs performed that Tech Is did *not* perform. (Doc. 61-4, p.  61:19-62:4). More importantly, Green shows no evidence that

---

[13]    Green, Rodgers, and Williams also appeared to assert claims based on the Associate Support Specialist position in the original complaint. *See* doc. 1, p. 8 ¶ 38. However, the Second Amended Complaint does not mention them asserting claims based on this position. The Defendant argued any claims based on them were waived and, especially because the Plaintiffs did not respond to that argument, the Court agrees. *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974–75 (11th Cir.2008).

Formel D accepts the performance of some Tech II tasks as satisfying the objective qualifications to become a Tech II.

Green also failed to submit any evidence indicating he was qualified to be a Supervisor, and the Court found none on its own search. Thus, Formel D's evidence indicating that "Green did not possess . . . experience in a client facing role, training in organizational management, competency in solving workplace problems, and aptitude in computer skills, namely, Word, Excel, and Power Point," (doc. 62-1, p. 7 ¶ 62), is undisputed.

Green further failed to identify a similarly situated comparator who received either position. Green identified Barrett as a comparator for his Tech II claim. But Barrett is not similarly situated because the undisputed evidence indicates that he, unlike Green, had the "electrical and diagnostic skills required for the position." (Doc. 62, p. 6 ¶ 45). Green identified "Lee," Frizzell, and "Devan" as comparators for his Supervisor claim. Frizzell is an unsuitable comparator because she, unlike Green, had the qualifications to be a Supervisor, as previously discussed. (Doc. 62-1, p. 7 ¶ 62). "Lee" and "Devan" cannot be comparators because Green did not provide any information about them beyond their first names, much less sufficient information to show that Lee and Devan were "similarly situated in all relevant respects." *See Brown,* 597 F.3d at 1174.

Finally, Green provided no evidence indicating Formel D's lawful justifications for choosing not to promote him to these positions—because he was not qualified and did not apply—were pretextual. It is undisputed that Green did not apply for these promotions, (*see* doc. 61-4, 58:3-5)("Q: Did you ever apply for any promotion at Formel D? A: No."), and Green cited insufficient evidence to show that either Barrett or Frizzell also did not apply for the promotions. Although Green wrote in his brief that Barrett was promoted to Tech II without applying, Green's testimony makes clear that statement was not based on personal knowledge. (Doc. 69, p. 57:22-25)("Q: Do you know if Tyler Barrett . . . applied for a promotion to be Tech II? A: No."). Green cited no evidence to show that Formel D did not take applications for either of these positions. Moreover, Green failed to create a genuine dispute of material fact regarding Barrett or Frizzell's qualifications and failed to show that he was qualified for either position.

### 5. Harrell's Failure to Promote Claims

Harrell only mentions three positions in the Second Amended Complaint: Onsite Repair Supervisor, Associate Support Specialist,[14] and Onsite Logistics Supervisor. (Doc. 13 ¶ 58). However, in her Brief (doc. 69), Harrell only refers to one position, which she refers to as "Quality" and claims "was awarded to a white

---

[14]     There is insufficient evidence for the Court to even discuss a claim based on this position. Suffice to say, any such claim would fail under *McDonnell Douglas*.

individual named Stewart." (Doc. 69, p. 32 ¶¶ 44-45). Harrell cited no evidence indicating what the qualifications for the "Quality" position were, much less evidence indicating that she possessed them. She further failed to identify a similarly situated comparator who received that position. "Stewart" cannot serve as a comparator because Harrell cited no evidence about Stewart beyond his name and race. Thus, any claim Harrell has regarding the "Quality" position fails under *McDonnell Douglas*.

However, it is undisputed that Harrell did apply for two positions: Tech II and Supervisor. Although she did not discuss these positions in her Brief, the Court will consider claims based on these positions out of an abundance of caution.

Harrell cited no evidence indicating that she was qualified to be a Supervisor or Tech II, and the work experience Harrell discussed in her depositions indicates that she was not qualified for either position.[15] Moreover, Harrell failed to identify a similarly situated employee who received either promotion. As to Tech II, Harrell does not attempt to identify a comparator. As to Supervisor, Harrell points to Frizzell and "Stewart." However, Frizzell cannot be a comparator because: (a)

---

[15]     Harrell graduated from high school in 2014 and attended no trade schools or secondary education. Between graduating and working for Formel D, she worked as a cosmetologist, at Home Depot for 18 months, and at a manufacturing plant for 6 months, where she put wires into car seats. (Doc. 61-5, 20:5-27:24).

unlike Frizzell, Harrell never worked as a Tech I; and (b) the evidence indicates that Frizzell was qualified. "Stewart" cannot be a comparator because there is no evidence of a Supervisor with that name.

### 6. McMurray's Failure to Promote Claims

McMurray claims that he was discriminatorily denied promotions to Tech II and Supervisor.[16] McMurray failed to show that he was qualified for either position. With regards to Tech II, McMurray only cited his own testimony discussing how, in his opinion, the job he started after being terminated at Formel D "takes tremendous skills." (*See* Doc. 69, p. 33 ¶ 50)(citing doc. 61-6, 175:17-176:18). This evidence is insufficient to create a genuine dispute of material fact regarding whether McMurray possessed the qualifications to be a Tech II while he was employed at Formel D. McMurray cited no evidence indicating that he was qualified to be a Supervisor. Meanwhile, Formel D's evidence indicates that McMurray was not. (Doc. 62-1, p. 9 ¶ 77).

McMurray also failed to identify a similarly situated comparator who received either position. McMurray points to Barrett, McCurley, Frizzell, "Devan," Hammond, and "Lee." (Doc. 69, p. 33-34 ¶ 55). Barrett, McCurley,

---

[16]     McMurray claims that he was discriminatorily denied promotions awarded to Barrett, McCurley, Frizzell, "Devan," Justin Hammond, and "Lee." (Doc. 69, p. 33-34 ¶ 55). These employees were awarded Tech II and Supervisor positions.

Frizzell, and Hammond are unsuitable comparators because, as previously explained, these employees had the qualifications necessary for the positions they received. "Devan" and "Lee" are unsuitable comparators because McMurray cited no evidence indicating they were similarly situated. In fact, McMurray testified that he knew nothing about any of his purported comparators' work experience, educational background, or even what promotions they received—all that he knew was that they were white and had higher positions than him.[17]

Formel D explained it decided not to promote McMurray to either position because he was not qualified and did not apply. McMurray lacks any evidence indicating that these justifications were pretextual. The only evidence he cited on this point was his testimony discussing whether the jobs were posted, but that testimony does not help him. (*See* Doc. 61-6, p. 101:2-4)("Q: do you know if Formel D posts job opportunities? A: I haven't seen them."); (*id.* at 101:6-8)("Q: Do you know if they posted job opportunities? A: I do not recall any."); (*id.* at 101:

---

[17]   *See* doc. 61-6, 109:23-24 ("I don't know what kind of qualifications they're looking for"); *Id.* at 110:7-12 ("I don't know [McCurley's] educational background…[or] work experience"); *Id.* at 115:11- 12 ("I don't know anything about [Frizzell's] work experience"); *Id.* at 112:13-22 ("I don't the qualification[s]" or "anything about [Barrett's] educational background . . . [or] work experience."); *Id.* at 116:20-25 ("I don't know anything about [Hughes'] educational background . . . [or] his work experience"); *Id.* at 118:16-21 ("I don't know anything about [Devan LNU's] educational background . . . [or] his work experience."); *Id.* at 120:11-24 ("I don't know the factors they considered [in promoting Hammond to the Technical Director position] or "anything about [his] educational background . . . [or] work experience."); *Id.* at 122:2-7 ("I don't know anything about [Lee LNU's] educational background . . . [or] his work experience.").

11-23)("Q: Do you know if they posted job opportunities while you were employed at Formel D? A: No, sir, they didn't. Q: How do you know they did not? A: I haven't seen any."). He has no evidence indicating that he was qualified for either position, that the employees who were promoted to those positions were not qualified, that he applied for either position, that the people who were promoted to those positions did not apply, or that Formel D did not take applications.

### 7. Rodgers' Failure to Promote Claims

It is unclear which positions Rodgers claims to have been discriminatorily denied. In the Second Amended Complaint, Rodgers claimed that he was discriminatorily denied a promotion to Tech II. (Doc. 13 ¶ 67). After filing the complaint, however, Rodgers was promoted to Tech II, and his Brief does not explain how this delayed promotion could amount to a failure-to-promote claim.

As far as the Court can tell, the only positions Rodgers specifically applied to and did not receive were Project Manager and Supervisor. However, Rodgers does not mention these positions or the employees who were promoted to these positions in his Brief. It thus appears that Rodgers has waived claims based on these positions. To the extent those claims remain, they nonetheless fail.

Rodgers failed to show he was qualified for Project Manager or Supervisor. The qualifications for the Project Manager position were "experience in project

calculation, project controls, or project planning." (Doc. 62-1, p. 12 ¶ 87). Rodgers specifically testified that he lacked any of that experience. (Doc. 61-20, 60:11-19); *see also* (doc. 61-20, Ex. 34)(Rodgers' Resume). The qualifications for Supervisor have been previously discussed, and there is no evidence that Rodgers met them.

Additionally, Rodgers did not attempt to identify a similarly situated comparator who was promoted to either position. Finally, the record is devoid of evidence that Formel D's lawful justifications for choosing not to promote him to either position—because he was not qualified—were pretextual.

### 8. Williams' Failure to Promote Claims

Williams does not specifically identify a position that he was discriminatorily denied in the Second Amended Complaint. In his Brief, however, he writes that he "had sought the Lead Tech position . . . and was denied." (Doc. 69, p. 36 ¶ 73). The undisputed facts indicate that this reference to a "Lead Tech" position was intended to refer to a responsibility held by McCurley called "Shift Lead." The "Shift Lead position is not a distinct job classification and is instead an additional function of technician roles." (Doc. 63, p. 32). Therefore, Williams cannot claim to have been discriminatorily denied a promotion to "Lead Tech."

Williams also writes that he was discriminated against when unspecified "supervisor positions" were filled by unspecified employees. (Doc. 69, p. 37 ¶ 76).

Williams provided no evidence indicating that he was qualified to be a Supervisor, did not identify a similarly situated comparator, and has no evidence that Formel D's lawful justifications for choosing not to promote Williams to Supervisor— because Williams was not qualified and did not apply—were pretextual. Williams cited no evidence on this point.

Finally, Williams refers to the Technician III position in his Brief. If this reference could be interpreted as stating a claim for discriminatory denial of a promotion to Tech III, this claim would fail under *McDonnell Douglas*. Williams failed to provide evidence to show that he was qualified to be a Tech III, specifically with regards to the requisite 10 years of experience. (*Id.* ¶ 20). The only evidence Williams cited to prove his experience was that "he had been working for Formel D since 2015." (Doc. 69, p. 37). Moreover, Williams cannot identify a similarly situated comparator because, as he admitted (Doc. 69, p. 3 p. 21), "no Formel D employees were interviewed or considered for Technician III." (Doc. 63, p. 6 ¶ 21). Finally, and again, the record is devoid of pretext.

### 9.  Convincing Mosaic

The Plaintiffs present their "convincing mosaic" argument collectively. (Doc. 69, p. 46). In support of their mosaic, they list only three "facts." As explained below, none of these facts are supported by evidence.

First, the Plaintiffs write that Formel D "let an all-white supervisory staff use their subjective judgment in making employment decisions affecting promotions and pay increases." (Doc. 69, p. 47). The undisputed facts show that Formel D did not have an all-white supervisory staff, (*see* doc. 73, p. 19), and "subjective criteria are not discriminatory per se." *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir. 1985).

Second, the Plaintiffs claim that Formel D failed to comply with a provision of their contract with MBUSI, and that this failure indicates discrimination. Specifically, Plaintiffs claim that "Formel D was contractually bound to by [sic] MBUSI . . . to be analyzing and reporting their employment data on a semi-annual basis for adverse impact discrimination. No data was reported. . . . Formel D failed to do any analysis whatsoever." (Doc. 69, p. 54). However, the Plaintiffs cite no evidence indicating Formel D failed to report this data or conduct such an analysis. Thus, even if a failure to analyze and report employment data could indicate discriminatory promotional practices, the Plaintiffs failed to support this theory with evidence.

Third, the Plaintiffs claim that Formel D "failed to post all jobs" and "utilized an informal . . . method of filling positions." (Doc. 69, p. 47). However, the Plaintiffs did not identify a single instance of a position being filled informally.

The closest they come is where they write in their Brief that Green "personally observed white employees Tyler Barrett and Tyler McCurley move to Tech 2" by "verbally expressing an interest to a manager." (Doc. 69, p. 30)(citing doc. 61-4, p. 56:22-57:17). However, Green's testimony, in context, reveals that he did not actually observe anyone being promoted informally. Instead, Green did not "know if [Barrett and McCurley] applied" for that position and Green did not personally ever look at Formel D's career page or any other website where jobs were posted. (Doc. 61-4, p. 58:2-59:21). Without evidence of a position being filled informally, the Plaintiffs' assertions regarding Formel D's promotional practices are based on mere speculation and rumor.

But even if the Plaintiffs had supported the three "facts" above with evidence, they would still have failed to establish a convincing mosaic. Although not dispositive, the Court finds that the undisputed evidence of racial diversity in the coveted positions is strongly indicative of a lack of discrimination in Formel D's promotional practices. As the Plaintiffs admit, Formel D had "roughly equal numbers of African Americans and Caucasian across all . . . management-level roles." (Doc. 63 p. 8 ¶ 29; Doc. 69 p. 5 ¶ 29). The undisputed evidence further shows that 43 out of 93 Tech Is and 27 out of 55 Tech IIs in Vance were African American. In fact, three of the Plaintiffs are African Americans who worked as

Tech IIs, despite four of their co-Plaintiffs claiming they were denied promotions to Tech II *because* they were African American. Moreover, this diversity is not limited to Vance—as Plaintiffs concede, there are "roughly equal numbers of African Americans and Caucasians across all Technician . . . roles." (Doc. 63, p. 8 ¶ 29); (Doc. 69, p. 5 ¶ 29).

Considering all the evidence, Plaintiffs have failed to present a convincing mosaic. *C.f. Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022)(finding a mosaic convincing to show a white crane operator was discriminatorily fired based on evidence of a black employee committing the same violation but remaining employed; a mass attrition of white employees after a black supervisor took charge; contradictory testimony from management on reasons why white crane operators left; and the decisionmaker making comments such as calling the plaintiff a "racist" and referring to groups of white crane operators as "Klan meetings.").

## B. RETALIATION CLAIMS

Plaintiffs Beverly, Harrell, McMurray, Green, Rodgers, and Williams also assert claims for retaliation under § 1981,[18] arguing they were terminated for filing

---

[18]    In the Second Amended Complaint, Fuller claimed that he was constructively discharged when Formel D transferred him to Bibb County. (*See* doc. 13 ¶¶ 51-52). However, Fuller appears to have waived this claim by failing to mention "constructive discharge" at all in his Brief. Moreover, even if that transfer constituted an adverse employment action, Formel D justified

the above-described EEOC charges regarding Formel D's promotional practices.[19] In support of these claims, they offer only circumstantial evidence.

Retaliatory termination claims that rely on circumstantial evidence are also analyzed using the burden-shifting paradigm established in *McDonnell Douglas. See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Under this framework, the plaintiff first bears the burden of establishing a *prima facie* case, which requires a plaintiff to show that (1) he was engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Establishing a causal connection requires showing "that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

If a plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a

---

transferring him by showing "that Bibb County needed Technicians in response to Mercedes expansion of repair and remediation work." (Doc. 62-1 p. 6 ¶ 51). Fuller gave the Court no reason to doubt this lawful justification.

[19]     Although the Second Amended Complaint indicated that some Plaintiffs wished to challenge certain individual disciplinary incidents as acts of retaliation, Plaintiffs' Brief only discusses retaliation claims based on termination. (*See* Doc. 69, p. 55-57).

legitimate, non-discriminatory reason for the adverse employment action. *Bryant,* at 1308. If the defendant rebuts the presumption, the plaintiff must then show that the defendant's proffered reason was merely a pretext to mask discriminatory actions. *Id.*

Plaintiffs Beverly, Harrell, McMurray, Green, Rodgers, and Williams provided sufficient evidence to demonstrate they engaged in protected activity and suffered adverse employment actions—each filed an EEOC charge and was either terminated or not re-hired after the Pandemic. However, for the reasons stated below, each Plaintiffs' retaliation claim still fails under *McDonnell Douglas*.[20]

### i. Beverly's Retaliation Claim

Beverly failed to show a causal link between his EEOC charge and termination. He cited no evidence on this point. The temporal proximity between Beverly's EEOC charge and his termination does not indicate a causal link— Beverly filed his EEOC charge four months before he was terminated. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1137 n. 15 (11th Cir. 2020)(holding that two month period between EEOC charge and termination was insufficient to show causation); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)(holding two weeks was evidence of pretext but "probably

---

[20]     Unlike with their discrimination claims, Plaintiffs do not attempt to show their retaliation claims under an alternative framework. (*See* Doc. 69, p. 55-57).

insufficient to establish pretext by itself"). Moreover, Beverly failed to show that the Formel D officials who terminated him—who he did not even identify—were aware that Beverly filed an EEOC charge. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(holding that decision maker's knowledge of protected activity was necessary to demonstrate a causal link to adverse action); *Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 824 (11th Cir. 2008)("[P]rotected activity must be known to the decision-maker who takes the adverse action."). Beverly claims that the fact that he had a "basically drama free work history" before filing the EEOC charge and afterwards was subject to "inconvenience, increased job scrutiny, petty write-ups, and nit-picking discipline" indicates that his EEOC charge was causally linked to his termination. However, Beverly's work history included his 2016 termination for tardiness and attendance issues. Thus, even if a "drama free work history" could indicate causation, Beverly's work history would not.

Even if Beverly showed causation, he still lacks evidence indicating pretext. Formel D explained its decision to terminate Beverly was based on an MBUSI manager requesting Beverly be fired due to attendance issues. Beverly cited no evidence indicating that an MBUSI manager did not make this request. Moreover, Beverly only attempted to show he did not have attendance issues by claiming that, with regards to the September 2019 incident, he "did not recall it occurring."

(Doc. 69, p. 9 ¶ 60). The fact that Beverly did not remember the incident is insufficient for a reasonable juror to conclude that it did not occur.

With insufficient evidence to show causation and no evidence indicating Formel D's lawful justification for terminating him was pretextual, Beverly's retaliation claim cannot survive summary judgment under *McDonnell Douglas*.

### ii.  Harrell's Retaliation Claim

Harrell failed to show a causal link between her termination and EEOC charge. The temporal proximity does not indicate a causal link—Harrell filed her EEOC charge nearly five months before she was terminated. *See Gogel*, at 1137 n. 15 (11th Cir. 2020); *Hurlbert*, at 1298 (11th Cir. 2006). Any inference of causation that could be drawn from Harrell lack of disciplinary history with Formel D before filing the EEOC charge is insufficient by itself to show causation, especially because Harrell's worked at Formel D for only five months.

Harrell also failed to show pretext. Formel D claims that Harrell was terminated for repeatedly leaving her workstation and for her involvement in the shouting match with Welch. (Doc. 63, p. 22 ¶ 124). Harrell failed to cast doubt on those justifications. The only attempt Harrell made was by pointing to the fact that Welch was not terminated. However, this fact is fully explained by the undisputed fact that Welch, unlike Harrell, "did not have a prior disciplinary history." (Doc.

63, p. 22 ¶ 126); *See Ramsay v. Broward Cnty. Sheriff's Off.*, 303 F. App'x 761, 765 (11th Cir. 2008)(employee's subjective disagreements with disciplinary citations leading to termination are insufficient to show pretext).

### iii.  McMurray's Retaliation Claim

McMurray failed to cite sufficient evidence to show a causal link between his EEOC charge and termination. In fact, he cited no evidence on this point. The temporal proximity of 8 months between filing his EEOC charge in February 2019 and his termination in October 2019 is insufficient. McMurray also does not identify who decided to terminate him, much less show evidence that the decisionmaker was aware McMurray had filed an EEOC charge.

McMurray also failed to show pretext. Formel D justified McMurray's termination based on his "failure to perform work on a single car during the period, in addition to his prior counseling for attendance." (Doc. 63, p. 25 ¶ 143). In his Brief, McMurray attempts to paint his production problems as pretext by arguing that his production was not actually zero, Formel D's management just "purposefully did not show him how to turn in documentation reflective of the jobs he had performed." (Doc. 69, p. 20 ¶ 139). In support of this argument, McMurray only cites to his testimony stating that "no one told me I had to turn in any sheets." (Doc. 61-6, p. 184:22-25). However, in different parts of his testimony, McMurray

also claimed that his production was zero because "I wasn't having no cars," (*id.* 185:3-5), and because "they didn't tell me *at first* I had to turn in repair sheets." (*Id.* 187:7-8)(*emphasis added*). McMurray also testified that he "could not recall whether he had turned in some sheets," (*id.* at 187:15-16), and had previously made statements explaining that his production was zero because he was helping to train newer Techs. (Doc. 62-1, p. 10 ¶ 75). A reasonable juror could not conclude that Formel D concocted McMurray's production issues to cover-up retaliatory motivations based on this record.

With regards to his attendance issues, McMurray claims that "Formel D had not been informing MBUSI official Frank Roller about medical issues he was experiencing with his hands that required numerous doctor's visits and his absence from the assignment." (Doc. 69, p. 19 ¶ 136). Notably, besides this testimony, McMurray submitted no evidence of medical issues with his hands or any visits to a doctor. This evidence, even viewed in the light most favorable to McMurray, is insufficient to show pretext.

### iv.  Green, Rodgers, and Williams' Retaliation Claims

The retaliatory termination claims of Green, Rodgers, and Williams are factually indistinguishable, so the Court analyzes them together. Specifically, these

Plaintiffs claim that Formel D used the Pandemic as an excuse to justify firing them in retaliation for their EEOC charges.

At the outset, the Court notes that none of these Plaintiffs stated claims for retaliatory termination in their Second Amended Complaint. (*See* doc. 13). Although Defendant argued this omission means that these Plaintiffs waived their claims, the Plaintiffs did not respond to that argument in their Brief. Thus, the Court only examines these claims out of an abundance of caution. *See Davis*, 516 F.3d at 974–75.

Plaintiffs Green, Rodgers, and Williams failed to show a causal link between their EEOC charges and terminations. Each Plaintiff failed to identify the official who terminated them, much less provide evidence indicating that official was aware they had filed an EEOC charge. The temporal proximity between their EEOC charges and terminations do not indicate a causal link—Green, Rodgers, and Williams filed their EEOC charges in February 2019, nearly a year before they were terminated in April 2020.

These Plaintiffs claim that three facts show causation. (*See* doc. 69, p. 57). First, these Plaintiffs noted that "[w]hite employees were called back to work." (Doc. 69, p. 15 ¶ 108). This evidence would be highly relevant if these Plaintiffs

were claiming to have been terminated on the basis of their race, but it is significantly less relevant to this claim of retaliation for protected activity. Second, the Plaintiffs further argued their "their lack of disciplinary history and job performance mandated their return to work after the pandemic subsided." (*Id.* ¶ 165, 172). However, there is no objective evidence supporting this claim, and the Plaintiffs' subjective beliefs that they deserved to have been rehired, standing alone, do not indicate that Formel D was motivated by retaliatory animus. Finally, these Plaintiffs claims that the fact that "Formel D went 7 for 7 in getting rid of the Plaintiffs who filed EEOC charges should raise an eyebrow or two." (*Id.* p. 57). This fact, without more information—including, at least, the total number of employees who filed EEOC charges in the years leading to the Pandemic—is insufficient to show a causal link between Plaintiffs' protected activities and terminations.

Even if these Plaintiffs could establish causation, their claims would still fail. Formel D showed that each of these three Plaintiffs were laid off initially due to the Pandemic and terminated permanently "due to shortage of work." (Doc. 63 p. ¶¶ 108, 165, 172). These Plaintiffs do not even attempt to show this justification was pretextual, and the Court found no evidence of pretext in the record through its own search.

## IV.   CONCLUSION

Accordingly, Defendant's Motion for Summary Judgement is due to be

**GRANTED**. An Order consistent with this Opinion will be entered.

  **DONE** and **ORDERED** on March 9, 2023.

_____
L. Scott Coogler
United States District Judge

211854